IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| Jeremiah C. Dowty, | ) CIVIL ACTION NO. 2:14-4733-RMG-BM |
|     Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| James K. Brennan and Christopher Craven, | ) |
|     Defendants. | ) |

    This action has been filed by the Plaintiff against the Defendants, both Charleston County Sheriff's Deputies, pursuant to 42 U.S.C. § 1983. Plaintiff alleges a violation of his Fourth Amendment rights by the named Defendants.

    While the Defendant Brennan filed an Answer and Counterclaim to Plaintiff's Amended Complaint, the Defendant Craven filed a Rule 12 motion to dismiss, arguing therein that he is entitled to dismissal as a party Defendant in this case. Plaintiff has filed a Memorandum in Opposition to Craven's motion, which is now before the Court for disposition.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), D.S.C. The Defendant Craven has filed a motion to dismiss. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Allegations of Amended Complaint**

Plaintiff alleges that on December 19, 2012 at approximately 6:30 p.m. he pulled into the driveway of his brother's house at 1021 Greenhill Road. Plaintiff alleges that he had turned his car off when another vehicle pulled in the driveway directly behind him with its headlights on. Plaintiff alleges that he did not know who was behind him, so he held his cell phone up to the light in an attempt to indicate his ability to call for help. Plaintiff alleges that the vehicle then began to pull out of the driveway, and he exited his car. Plaintiff alleges that when he got out of his vehicle, he noticed that the other vehicle had parked in the street. The door of the vehicle then opened and an individual who Plaintiff identifies as the Defendant Brennan, who was in his police uniform, got out. Plaintiff alleges that Brennan identified himself and asked how he was doing, to which Plaintiff responded "I don't know, how am I doing, if you are talking to me?" Plaintiff alleges that Brennan then "became irate", and told Plaintiff to put his hands on his vehicle. Plaintiff alleges he complied with this demand.

Plaintiff alleges that Brennan then asked Plaintiff for his license, to which Plaintiff responded by patting his pockets and telling Brennan it was in the seat of the car. Plaintiff alleges that Brennan told him to put his hands back on the car, and that he complied. Plaintiff alleges that Brennan then asked him what was in his pockets, and Plaintiff, with his back still to Brennan, reached into his pockets and began stating: "phone, keys . . .", at which time Brennan "grabbed him by his right arm and swung him around". Plaintiff alleges that he put his hands up and said "lets talk about this", to which Brennan replied "no".

Plaintiff alleges that he then tried to back away from Brennan, but that Brennan

2



grabbed him by his hair and dragged him out of the driveway into the street. Plaintiff alleges that he remained on his feet, and that when they got to the street he pulled his phone out of his pocket and said "you are acting horribly: I am going to record this". Plaintiff alleges that Brennan responded by knocking the phone out of his hands and into the street, breaking the case, and then began punching the Plaintiff, opening a cut in Plaintiff's face. Plaintiff alleges that Brennan then slammed him into the ground and put his knee on Plaintiff's chest, exclaiming "you are going to jail" while continuing to punch Plaintiff in the head.

    Plaintiff alleges that Brennan weighed around 250 pounds, and that when he began to flail his legs in an attempt to get up, Brennan moved his knee to Plaintiff's throat. Plaintiff alleges that this caused him to no longer be able to breath, so he reached for Brennan's crotch and squeezed, causing Brennan to immediately remove his knee and stand up. Plaintiff alleges that he was brought up in the same motion, and was released. Plaintiff alleges that by that time Brennan "appeared to be struggling" and had reached to the front of his belt, so Plaintiff asked "what are you going to do now, shoot me?" Plaintiff alleges Brennan responded by saying "no, I have got something for you". Plaintiff alleges that Brennan then began to move towards his vehicle, and that when he [Plaintiff] realized there was a dog in the vehicle that Brennan was about to release by opening the door, he [Plaintiff] "fled towards the safety of his brother's house". Plaintiff alleges, however, that he was attacked by the released dog several feet short of the door to the house.

    Plaintiff alleges that he attempted to defend himself from the dog, which was chewing and scratching at him and "causing tremendous amounts of pain to his left leg", while Brennan came up behind him yelling at him. Plaintiff alleges that Brennan refused to help him and instead yelled

3



at him to stop fighting, even though Plaintiff alleges he was merely reacting to the dog's attack. Plaintiff alleges that Brennan "allowed the dog to bite and tug on Plaintiff's legs several more times before pulling the dog off". Plaintiff was then placed in handcuffs.

Plaintiff alleges after he had been placed in handcuffs by Brennan, other members of the Charleston County Sheriff's Department arrived. Plaintiff alleges he was placed on his vehicle to be searched, and that his vehicle was also searched, before being told to lay face down in the street, where he began to be questioned by the Sheriff's Deputies. Plaintiff alleges that his answers were "mocked" and "distorted" by the Deputies, at which time Plaintiff yelled at the Deputies and then "broke down and wept uncontrollably". Plaintiff alleges that he was then taken via EMS to Roper Hospital, where he encountered the Defendant Craven.[2] Plaintiff alleges that Craven informed him that Brennan had accused him of DUI, and that after reading Plaintiff a legal document, demanded the Plaintiff's blood be surrendered. Plaintiff alleges that he [Plaintiff] "refused to surrender his blood", and demanded a lawyer, which Craven "dismissed".

Plaintiff alleges that he was thereafter taken to the Charleston County Detention Center by Brennan and Craven and booked on a charge of DUI. Plaintiff alleges that although Craven was the arresting officer on the ticket, his arrest was based on false information provided by Brennan. Plaintiff alleges that he was also served with two warrants the following day that had been signed by "Deputy King", and that those warrants were also "based upon false information provided by Brennan". Plaintiff alleges that after being released on bond, he had a jury trial which found him

---

[2]This is the first time Craven is referenced as encountering Plaintiff in the Complaint. Plaintiff does not allege that the Defendant Craven was one of the deputies who had previously been at the scene of his arrest.



not guilty of the charges of assault and battery second and third degree and resisting arrest. Plaintiff further alleges that, upon information and belief, the DUI charge was dismissed at a later time.

In his **First Cause of Action,** Plaintiff alleges that the Defendant Brennan violated his Fourth Amendment right to be free from unreasonable seizures by stopping him without reasonable suspicion or probable cause.

In his **Second Cause of Action**, Plaintiff asserts a claim of excessive use of force against the Defendant Brennan.

In his **Third Cause of Action,** Plaintiff assets a claim against both Brennan and Craven for arresting him without probable cause on the charges of resisting arrest, assault and battery second degree, and driving under the influence. Specifically, Plaintiff alleges:

> The acts and omissions of Defendant Brennan in arresting [Plaintiff] for assault and battery 2nd degree and resisting arrest without probable cause violated his Fourth Amendment rights to be free from unreasonable seizures. Deputy [Brennan] submitted false information or omitted material facts in his application for a warrant causing it to lack probable cause to charge [Plaintiff] with assault and battery and resisting arrest. Deputy Brennan lacked probable cause to arrest [Plaintiff] for resisting arrest because 1) Brennan never placed [Plaintiff] under arrest, 2) [Plaintiff] did not resist arrest, and 3) whatever self defensive actions [Plaintiff] took to protect him from the assault are authorized by law. Under South Carolina law a citizen has a right to resist an unlawful arrest.

See Amended Complaint, ¶ 38.

Plaintiff seeks monetary damages.   See generally,  Plaintiff's Amended Complaint.

## Discussion

Craven argues in his Rule 12 motion that the Amended Complaint fails to state a claim against him upon which relief can be granted. Craven further argues that even if the allegations of the Amended Complaint do state a claim against him, he is entitled to qualified immunity. When



considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if Plaintiff has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face". Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Turning then to an examination of Plaintiff's allegations, Plaintiff alleges in his Amended Complaint that Craven is a Sheriff's Deputy. As such, Craven may be subject to damages in his individual capacity under § 1983 if he is found to have violated Plaintiff's constitutional rights. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4th Cir. 1977). Plaintiff's claim against Craven is for false arrest, and Plaintiff has therefore styled his claim against Craven as arising under the Fourth Amendment.[3]  Riley v. Dorton, 115 F.3d 1119, 1161 (4th Cir. 1997) [The Fourth Amendment governs claims arising during the course of an arrest, investigatory stop, or other "seizure" of a person]; see also Graham v. Connor, 490 U.S. 386, 388 (1989). In order to set forth a viable false arrest claim against the Defendant Craven, Plaintiff must have sufficiently alleged that his arrest by Craven was not lawful; i.e., that Craven lacked the necessary probable

---

[3]As Plaintiff's claim as set forth in his Third Cause of Action is only for false arrest, it applies only to the circumstances surrounding his actual arrest, and not to the continuation of the prosecution of the charges against him, which would be a separate claim for malicious prosecution. See Wallace v. Kato, 549 U.S. 389 (2007) ["Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process - when, for example, he is bound over by a Magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process."] (internal citations omitted); see also Panzica v. Corrections Corp. of America, 559 Fed.Appx. 461, 464-465 (6th Cir. Mar. 17, 2014)[Distinguishing between claims for malicious prosecution and false arrest or imprisonment].



cause. Martin v. Lott, No. 07-3782, 2010 WL 597209, at * 2 (D.S.C. Feb.16, 2010) ["To prevail on a false arrest claim, a Plaintiff must establish that his arrest was not lawful"]; Wortman v. Spartanburg, 425 S.E. 2d 18, 20 (S.C. 1992) ["The fundamental question in determining whether an arrest is lawful is whether there was 'probable cause' to make the arrest"]; see also Wong Sun v. United States, 371 U.S. 471, 479 (1963) ["The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirement of probable cause would leave law-abiding citizens at the mercy of the officers' whim or caprice"] (internal quotations omitted].

In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest, and "[t]o prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [Plaintiff] was violating [the law]". Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002); see also Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim]; Ashcroft, 129 S.Ct. at 1949 [Plaintiff must set forth sufficient factual matters to state a plausible claim for relief "on its face"]. After careful review of the allegations of the Amended Complaint, the undersigned is constrained to agree with the Defendant that Plaintiff has failed to allege any facts sufficient to give rise to an inference that Craven acted without probable cause in this case.

The allegation involving Craven only relates to the DUI charge.[4] Plaintiff alleges that

---

[4]Although Plaintiff's Third Cause of Action asserts three (3) claims for false arrest: on the charges of resisting arrest, assault and battery, and DUI; a plain reading of the earlier allegations in the Complaint shows that Craven was only involved in the arrest warrant for DUI, a fact confirmed
(continued...)



when he arrived at Roper Hospital, Craven wanted to obtain a blood sample so that Plaintiff's blood alcohol level could be determined, but that Plaintiff refused, following which Craven along with Brennan took Plaintiff to the Detention Center, where he was booked for DUI.  However, Plaintiff himself concedes in his allegations that, although Craven was listed as the arresting officer on the DUI ticket, his arrest was "based on false information provided by Brennan". Amended Complaint, ¶ 33.  This allegation does not give rise to a false arrest claim against Craven.  Hawke v. Bullard-Wolf, No. 11-2759, 2013 WL 2300754 at * 3 (D.S.C. May 24, 2013) [Officer may rely on information obtained from other police officers to support probable cause for warrant]; see also United States v. Pitt, 382 F.3d 322, 324 (4th Cir. 1967); cf. United States v. Laughman, 618 F.2d 1067, 1072 (4th Cir. 1980) ["[S]o long as the officer who orders an arrest . . . has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest . . . to be personally aware of those facts."].  Additionally, while in the text of his Third Cause of Action Plaintiff alleges that *Brennan* arrested him for assault and battery and resisting arrest without probable cause and "submitted false information or omitted material facts in his application for a warrant . . . .", Craven is not even mentioned.  Amended Complaint, ¶ 38.

These allegations do not provide a basis for a false arrest claim against Craven, as Plaintiff's Amended Complaint contains no allegations sufficient to give rise to a reasonable inference that Craven would have had any reason whatsoever to suspect that Brennan, a fellow police officer, was providing him with false information.  Hawke, 2013 WL 2300754 at * 3; see also United

---

[4](...continued)
by the Plaintiff himself in his response brief, in which he only discusses his false arrest claim against Craven as involving the DUI charge.  See Plaintiff's Brief, at pp. 5-7.  See also, Amended Complaint, at ¶ ¶ 30-33.



States v. Sowards, 690 F.3d 583, 588 (4th Cir. 2012) ["Probable cause exists if, given the totality of the circumstances, the officer 'had reasonably trustworthy information . . . sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense'"], citing Beck v. Ohio, 379 U.S. 89, 91 (1964); see also Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998).  Further, the fact that the DUI charge may have later been dismissed is not a relevant factor in considering whether there was probable cause for the charge at the time of the arrest.  Jackson v. City of Pittsburgh, 492 Fed.Appx. 297, 299 (3d Cir. 2012) [the ultimate dismissal of charges is not relevant to whether the defendant officers had probable cause to arrest Plaintiff at the time of his arrest]; Wright v. City of Philadelphia, 409 F.3d 595, 602 (3rd Cir. 2005) ["[I]t is irrelevant to the probable cause analysis . . . whether a person is later acquitted of the crime for which he or she is arrested"].

        In an attempt to prevent Craven's dismissal, Plaintiff argues in his response brief that an inference that Craven charged him with DUI without probable cause can be justified by a review of Craven's Supplemental Incident Report.  Plaintiff argues that Craven states in this report that he assisted Brennan, who believed Plaintiff was under the influence, with an evaluation of the Plaintiff, and that he [Craven] observed that Plaintiff had a "blank stare", "dilated pupils", was "very euphoric", and "stared straight ahead" when asked questions.  Plaintiff also quotes Craven's report as concluding with "based on these observations and what Sgt. Brennan told the R/D about the suspect's actions prior to detention, he was placed under arrest for DUI".  Plaintiff's Brief, p. 6.  However, this argument does not save Plaintiff's claim against Craven from dismissal.

        First, none of these allegations are contained in the Amended Complaint.  Cf. Republican Party of N. C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) [A "motion to dismiss under



Rule 12(b)(6) tests the sufficiency of a complaint . . . it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses"], (citation omitted); Dickson, 309 F.3d at 213 [Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].  Second, although Plaintiff asks that the statements and findings in this report be considered by the Court, a copy of the report has not been submitted to the Court for review.[5]  Finally, even if the report was to be considered, the statements attributed to Craven in this report would *support* a finding of probable cause for the DUI charge filed against Plaintiff, and are therefore not sufficient to set forth a viable false arrest claim against Craven.  Brown, 278 F.3d at 368 ["To prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [Plaintiff] was violating [the law]"]; cf. Bell Atlantic Corp., 550 U.S. at 555 [While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level]; Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)  ["While the pleading standard is a liberal one, bald assertions and conclusions of law" are not sufficient to avoid dismissal of a complaint for failure to state a proper claim.].

       Finally, as there are no allegations from which it may be inferred that Craven knew or had any reason to suspect that Brennan was providing him with false information (which is what Plaintiff alleges), Craven is also entitled to qualified immunity from liability from this claim. Pearson v. Callahan, 555 U.S. 223, 231 (2009)[Qualified immunity shields public officials "from liability from civil damages insofar as [their] conduct [does] not violate clearly establish statutory

---

[5]Plaintiff's brief indicates that the report is attached to the brief as "Exhibit 1".  However, there is no attachment to the brief.



or constitutional rights of which a reasonable person would have known"] (quoting <u>Harlow v. Fitzgterald</u>, 457 U.S. 800, 818 (1982).[6]

### Conclusion

Based on the foregoing, it is recommended that the Defendant Craven's motion to dismiss be **granted**, and that Craven be **dismissed** as a party Defendant in this case.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 30, 2015
Charleston, South Carolina

---

[6]While Plaintiff argues in his response brief that a defense of qualified immunity should only be evaluated "in the context of summary judgment based on the evidence revealed in discovery"; <u>see</u> Plaintiff's Brief, at pp. 6-7, "[g]overnment officials are entitled to assert claims of qualified immunity prior to the onset of discovery in the form of a Fed.R.Civ.P. 12(b)(6) motion to dismiss." <u>Vaughn v. U. S. Small Business Adm.</u>, 65 F.3d 1322, 1325, n. 1 (6th Cir. 1995); <u>cf</u>. <u>Davis v. City of Geensboro, N.C.</u>, 770 F.3d 278, 281-282 (4th Cir. 2014); <u>Tobey v. Jones</u>, 706 F.3d 379, 393 (4th Cir. 2013) ["a defendant can raise the qualified immunity defense at both the motion to dismiss and summary judgment stage"], (citing <u>Behrens v. Pelletier</u>, 516 U.S. 299 (1966)).

11



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

